**UNITED STATES of America, Appellee,**

v.

**Luiz Ben ZVI and Roz Ben Zvi, Defendants–Appellants.**

Nos. 97–1418, 97–1422.

United States Court of Appeals, Second Circuit.

Argued June 8, 1998.

Decided Jan. 21, 1999.

---

50

Alan S. Futerfas, New York City, (Gerald L. Shargel, Ellen B. Resnick, on the brief), for defendant-appellant Roz Ben Zvi.

John L. Pollok, New York City, (Alan S. Futerfas, Gerald L. Shargel, Ellen B. Resnick, on the brief), for defendant-appellant Luiz Ben Zvi.

Cecilia L. Gardner, Assistant U.S. Attorney for the Eastern District of New York, Brooklyn, N.Y. (Zachary W. Carter, United States Attorney, Peter A. Norling, Assistant United States Attorney, of counsel), for appellee.

Before: OAKES and WALKER, Circuit Judges, and CARMAN, Judge.*

JOHN M. WALKER, Jr., Circuit Judge.

Brother and sister defendants-appellants, Roz Ben Zvi and Luiz Ben Zvi, respectively, appeal from a judgment entered June 26, 1997 in the United States District Court for the Eastern District of New York (Thomas C. Platt, Jr., *Judge*), following a jury trial. They were both convicted of a multiple-object conspiracy involving wire fraud, in violation of 18 U.S.C. § 371 (Count 1), and domestic and international money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), (a)(2)(B)(i) (Counts 8–11, 16–19); Roz Ben Zvi also was convicted of additional counts of domestic and international money laundering (Counts 5 and 13) and of filing false income tax returns in violation of 26 U.S.C. § 7206(1) (Counts 2 and 3). The charges in the indictment all arose out of the defendants' scheme to defraud their insurer, Lloyd's of London, by staging a robbery of Roz Ben Zvi's jewelry business. Roz Ben Zvi was sentenced to concurrent terms on each count that totaled ten years' imprisonment, while his sister, Luiz, received concurrent terms on each count for a total term of five years' imprisonment. Additionally, both defendants were ordered to pay restitution in the amount of $6,624,512, were subjected to criminal forfeitures of $1,370,000 and two properties, and were ordered to pay special assessments.

For the reasons stated below, we hold that (1) all money laundering counts charged against Luiz Ben Zvi and most of those charged against Roz Ben Zvi were time-barred, and therefore must be dismissed; (2) the judgment of criminal forfeiture against Luiz Ben Zvi, entered pursuant to the money laundering statute, must be reversed and we remand to the district court to reconsider the judgment of criminal forfeiture against Roz Ben Zvi; and (3) all of the domestic money laundering charges must be dismissed as multiplicitous with international money laundering charges for the same transactions.

---

* The Honorable Gregory W. Carman, Chief Judge of the United States Court of International Trade, sitting by designation.

We affirm both defendants' convictions for conspiracy and Roz Ben Zvi's conviction on the counts of international money laundering not time-barred and for filing false tax returns. We remand to the district court to reconsider sentencing, including forfeiture, and its order of restitution in light of this opinion.

## BACKGROUND

Roz Ben Zvi was the owner of Josi Jewelry, a gold chain manufacturing business in New York City. Luiz Ben Zvi was an employee of Josi Jewelry. On February 26, 1988, police responded to cries for help at Josi Jewelry and found the Zvis bound together in a back room. The Zvis falsely told the police that unidentified assailants had overtaken them, bound them, and stolen millions of dollars worth of gold chain. In actuality, a co-conspirator tied them up after they had created the appearance of a struggle; he then struck Roz Ben Zvi for added "realism" and left them locked in the back room. The Zvis subsequently filed an insurance claim with Lloyd's of London for $3,995,000. On August 15, 1988, Lloyd's made an electronic funds transfer from London, England, to Josi Jewelry's account at Chemical Bank in New York as full payment on the claim.

In the spring of 1993, the government informed the Zvis that they were under investigation by a grand jury for possible violations of federal law. The government sought stipulations from the Zvis to toll the statute of limitations for three months as to criminal violations that were not yet time barred. Roz Ben Zvi signed a stipulation on July 2, 1993 tolling the limitations period as to him until October 2, 1993. Luiz Ben Zvi refused to stipulate to any tolling.

On August 11, 1993, the grand jury indicted Luiz Ben Zvi, alleging her participation in a conspiracy to stage the February 26, 1988 robbery in order to defraud Lloyd's. In addition to one count of conspiracy to commit wire fraud, Luiz Ben Zvi was charged with a substantive count of wire fraud based on the August 15, 1988 wire transfer from Lloyd's in London to Josi Jewelry's New York account. On September 15, 1993, the government filed a superseding indictment alleging essentially the same criminal acts and adding Roz Ben Zvi as a defendant.

On March 9, 1994, a second superseding indictment was filed alleging that: (1) prior to the staged robbery of February 26, 1988, the Zvis had surreptitiously sold all of the gold they later claimed was stolen; (2) the Zvis allegedly laundered the proceeds of the wire fraud through six additional international funds transfers, dated May 17, 1988, July 28, 1988, September 1, 1988, September 23, 1988, November 11, 1988, and March 3, 1989; (3) Roz Ben Zvi had also engaged in three counts of laundering proceeds from narcotics trafficking and two counts of filing false tax returns; (4) international and domestic money laundering and filing false tax returns were additional objects of the conspiracy charged in count one; and (5) the Zvis were guilty of fourteen counts of money laundering, seven counts each of domestic and international money laundering for each of the seven identified funds transfers. The indictment also sought forfeiture, pursuant to 18 U.S.C. § 1956, of all property involved in the money laundering offenses.

On May 5, 1994, a third superseding indictment was filed that contained the forgoing allegations and added two more counts each of domestic and international money laundering against both defendants for two additional funds transfers, dated November 21, 1988, and March 1, 1989.

Before trial, in response to the defendants' motion, the district court dismissed for lack of venue the substantive wire fraud count and dismissed as time-barred the money laundering counts against both defendants based on the May 17, 1988 transfer and the money laundering count against Luiz Ben Zvi based on the July 28, 1988 transfer. At trial, the jury acquitted Roz Ben Zvi on the three counts of laundering proceeds from narcotics trafficking. The jury deadlocked on the money laundering counts for the September 1, 1988 and September 23, 1988 transfers, and the district court granted a mistrial as to those counts. Defendants were found guilty on the remaining counts. This appeal followed.

## DISCUSSION

The defendants challenge their convictions on numerous grounds. Specifically, they contend that: (1) most of the money laundering counts were barred by the statute of limitations; (2) the money received from the pre-robbery sale of gold did not constitute "proceeds" of the wire fraud within the meaning of 18 U.S.C. § 1343; (3) the charges for domestic and international money laundering based on the same underlying transaction were multiplicitous; (4) the district court's recital in its jury charge of the wrong parts of the statute with respect to the elements for domestic and international money laundering constituted plain error; (5) the district court's failure to instruct the jury on the element of materiality in the false tax return claims was plain error; (6) the money laundering counts must be reversed because the substantive charge for wire fraud, which constituted the "specified unlawful activity" underlying the money laundering counts, was dismissed on venue grounds; (7) the redacted indictment, which removed the substantive charge for wire fraud, when combined with the judge's erroneous instruction concerning which wire transfers could be considered in the wire fraud count, constructively amended the indictment; (8) the district court removed the factual issue of the scope of the conspiracy from the jury by instructing the jury on the government's theory of the case; (9) the district court erred in admitting testimony that bolstered the credibility of witnesses and drew legal conclusions; and (10) the district court abused its discretion in denying Luiz Ben Zvi's motion to sever. Some of these arguments require extended discussion; others do not. We will address each in turn.

### A. *Statute of Limitations*

■ Defendants contend that all of the money laundering counts for which Luiz Ben Zvi was convicted, as well as Roz Ben Zvi's convictions based on the July 28, November 11, and November 21, 1988 funds transfers, were time-barred, because the superseding indictments first alleging these counts were filed more than five years (for Luiz Ben Zvi) and five years and three months (for Roz Ben Zvi) after the transfers occurred, in violation of 18 U.S.C. § 3282.[1] The district court agreed with the government's argument that the superseding indictments related back to the filing date of the original indictment for the purposes of the statute of limitations, ruling that none of these counts was time-barred.

■ The filing of an indictment tolls the limitations period for the charges contained in that indictment. *See United States v. Grady*, 544 F.2d 598, 601 (2d Cir.1976). A superseding indictment will relate back to the date of the original indictment only if the superseding indictment does not "broaden or substantially amend the original charges." *United States v. Gengo*, 808 F.2d 1, 3 (2d Cir.1986); *see also Grady*, 544 F.2d at 601–02. Superseding indictments have been deemed timely when they simply added detail to the original charges, narrowed rather than broadened the charges, contained amendments as to form but not substance, or were otherwise trivial or innocuous. *See Gengo*, 808 F.2d at 3–4 (relation back where superseding indictment does not present new factual allegations or require defendant to prepare new evidence or defenses); *Grady*, 544 F.2d at 602 (relation back where superseding indictment narrowed, rather than broadened, charges).

The government contends that the money laundering counts added in the superseding indictments in this case did not broaden or substantially amend the original indictment because money laundering was part and parcel of the scheme to defraud Lloyd's. We disagree.

---

1. 18 U.S.C. § 3282 provides:

 Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

 Because Roz Ben Zvi signed a stipulation to toll the limitations period for three months, the applicable period for him is five years and three months.

While money laundering may have been a part of the scheme to defraud, the sixteen counts of money laundering added by the superseding indictments required the defendants to defend against additional charges that alleged violations of a different statute, contained different elements, relied on different evidence, and exposed the defendants to a potentially much greater sentence. *See* United States Sentencing Guidelines §§ 2F1.1(a), 2S1.1(a). Indeed, Roz Ben Zvi received a sentence of ten years' imprisonment on each of the money laundering counts, and only five years' imprisonment on each of the other counts. These changes cannot be characterized as either trivial or innocuous.

■ The government points to the *Gengo* court's statement that "notice is the touchstone in deciding whether a superseding indictment substantially changes the original charges," 808 F.2d at 3, and argues that the superseding indictments here were timely because the government had previously informed the Zvis that it intended to prosecute them for money laundering. This argument must fail. It is the "timely, pending indictment [that] serves this doctrine by apprising a defendant 'that [he] will be called to account for [his] activities and should prepare a defense.'" *Id.* (quoting *Grady*, 544 F.2d at 601 (alterations in original)). The issue then is whether the original indictment provided the defendant with timely notice of the charges that were later added by the superseding indictment. *Id.* Here, the original indictment failed to provide any such notice. It made no mention of the pre-robbery sale of gold or of the funds transfers that were allegedly used to launder the proceeds from the pre-robbery sale of gold.

Because we find that the statute of limitations was not tolled for these counts, we must reverse Luiz Ben Zvi's conviction on counts 8, 9, 10, 11, 16, 17, 18, and 19 and Roz Ben Zvi's conviction on counts 5, 8, 9, 13, 16, and 17, and dismiss these charges. We also reverse the judgment of criminal forfeiture against Luiz Ben Zvi, which was based on the money laundering counts, and remand the judgment of criminal forfeiture against Roz Ben Zvi, against whom money launder-

ing convictions remain, to the district court for redetermination.

■ Defendants contend that if the money laundering counts are time-barred, then conviction on the conspiracy count must also be reversed because (1) the money laundering was alleged as two of the objects of the conspiracy; (2) the jury was instructed that it could convict if it found any one of the four objects charged; and (3) there is no way to determine whether the jury's verdict on the conspiracy count was based on one of the permissible objects or on one of the impermissible, time-barred objects.

■ Defendants are correct that a conspiracy conviction must be reversed where one or more objects is invalid and "it is impossible to tell which ground the jury selected." *United States v. Foley,* 73 F.3d 484, 493 (2d Cir.1996) (citing *United States v. Yates,* 354 U.S. 298, 312, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957), which reversed a conspiracy conviction because one object of conspiracy was barred by statute of limitations); *see also Griffin v. United States,* 502 U.S. 46, 59, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991) (upholding conviction where jurors may have relied upon factually inadequate theory, but distinguishing cases where jury may have relied upon a theory that is "contrary to law"—e.g., time-barred).

In this case, however, it is not "impossible to tell" whether the jury's conviction for conspiracy was based in part on objects asserted in the indictment that were within the limitations period. The jury convicted Roz Ben Zvi of timely money laundering counts as well as for filing false tax returns, both of which were objects charged in the conspiracy. Construing the evidence in the light most favorable to the government, *see United States v. Potamitis,* 739 F.2d 784, 787 (2d Cir.1984), no reasonable jury could find that the government failed to establish either of these two valid objects of the conspiracy. *See Gengo,* 808 F.2d at 5; *see also United States v. Malpeso,* 115 F.3d 155, 166 (2d Cir.1997) (holding that error in jury instruction was harmless because verdicts on other counts demonstrated basis for verdict).

As to Luiz Ben Zvi, the issue is somewhat closer because she was convicted only for conspiracy and on time-barred money laundering counts. However, wire fraud, a legally valid object of the conspiracy, was an essential element of the money laundering counts; under the government's theory, the wire fraud was the "specified unlawful activity" giving rise to the laundered proceeds. *See* 18 U.S.C. §§ 1956(a)(1)(B)(i), (a)(2)(B)(i). As a result, by convicting Luiz Ben Zvi of money laundering (albeit on time-barred counts), the jury necessarily found that she engaged in the object of wire fraud. Under the peculiar circumstances of this case (where the money laundering *preceded* the actual wire fraud, *see infra* at Part B), unlike in *Yates*, there is no danger that Luiz Ben Zvi's conspiracy conviction rests solely upon the time-barred object of money laundering. The jury's money laundering verdict convincingly demonstrates that the jury found the object of wire fraud, which fell within the limitations period.

Because the jury's verdict on the conspiracy was based at least in part on permissible grounds, we affirm the conspiracy convictions as to both defendants.

### B. *Wire Fraud Proceeds*

The money laundering statute penalizes attempts to conceal or disguise the nature of proceeds from a "specified unlawful activity" enumerated in the statute. *See* 18 U.S.C. §§ 1956(a)(1)(B)(i), (a)(2)(B)(i), (c)(7). Although the wire fraud scheme charged in the indictment is a statutorily specified unlawful activity, the defendants argue that their money laundering convictions must be reversed because the only proceeds proved to have been "laundered" by the Zvis were the proceeds from the pre-robbery sale of gold, not the subsequent insurance proceeds received from Lloyd's. The gold sale proceeds, they contend, were not proceeds from wire fraud but at most proceeds from simple theft, which is not a "specified unlawful activity" under the money laundering statute. *See id.* We reject the defendants' narrow definition of "proceeds."

As the government points out, the insurance proceeds received from Lloyd's were used primarily to pay creditors and consignors. The proceeds from the pre-robbery sale of gold represented the defendants' take from the scheme. Thus, the jury could reasonably have found that the sale of gold was "part of a single scheme" to commit wire fraud and that the proceeds from the sale of gold constituted the requisite "proceeds from specified unlawful activity" under the money laundering statute. *See Potamitis*, 739 F.2d at 788 (scheme to rob, ruse by one of conspirators to play the "victim," and scheme to conceal and divide up proceeds from robbery were all "part and parcel" of a single conspiracy). It is immaterial that the defendants kept the gold proceeds and used the insurance proceeds to pay creditors instead of the other way around; at the end of the day, the defendants had their loot as a result of the fraud and had laundered it. Accordingly, we hold that there was sufficient evidence that the requisite "proceeds" were laundered to support the jury's verdict on the money laundering charges.

### C. *Multiplicity of Money Laundering Charges*

Each of the money laundering funds transfers identified in the superseding indictments was charged twice, once as domestic money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and once as international money laundering, in violation of § 1956(a)(2)(B)(i).[2] The defendants argue

---

**2.** Section 1956(a) provides, in pertinent part:

(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—

. . . .

(B) knowing that the transaction is designed in whole or in part—

(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity;

. . .

. . . .

(2) Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a

that it was multiplicitous to charge and convict them for both domestic and international money laundering based on the same funds transfers. We agree.

■ An indictment is multiplicitous if it "charges a single offense in more than one count." *United States v. Maldonado-Rivera*, 922 F.2d 934, 969 (2d Cir.1990).

> To determine whether an indictment is multiplicitous, ... we inquire whether each of the provisions defining the offenses unambiguously authorizes punishment for a violation of its terms, whether the two offenses are sufficiently distinguishable from one another that the inference that Congress intended to authorize multiple punishments is a reasonable one, and if so, whether the legislative history evidences a contrary legislative intent. The statutes are examined under the *Blockburger* test to determine if each requires proof of a fact that the other does not.

*United States v. Seda*, 978 F.2d 779, 780–81 (2d Cir.1992) (internal citations and quotation marks omitted).

The government argues that the two offenses here are sufficiently distinguishable to satisfy the *Blockburger* test (annunciated in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)) because the domestic money laundering count required proof that the defendants engaged in a "financial transaction" involving the illegal proceeds, whereas the international money laundering count required proof that defendants "transport[ed], transmit[ted], or transfer[red]" the illegal proceeds outside of or into the country.

Although the statutes may literally require different elements to be proved, we have previously held that statutory distinctions may not always satisfy *Blockburger*, and that sometimes the facts at hand may require a finding of multiplicity. *See, e.g., United States v. Holmes*, 44 F.3d 1150, 1154–56 (2d Cir.1995) (overturning structuring conviction as multiplicitous with money laundering conviction based on same transaction, despite two separate improper purposes); *Seda*, 978 F.2d at 781 (although "in general" we need only examine terms of the statutes, this approach is not always appropriate where statutes cover a broad range of activity).

■ In the context of this case, the "financial transactions" that the government had to establish in order to prove domestic laundering were the very same international "transmittals" of funds that were necessary elements of the international laundering counts. The only fact not common to both counts was the additional requirement of § 1956(a)(2)(B)(i) that the funds transfers be international. *Blockburger* is not satisfied where the elements of one charged offense are subsumed within another charged offense. *See, e.g., Whalen v. United States*, 445 U.S. 684, 694, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980) (defendant could not be convicted of both rape and felony murder where underlying felony was the rape, even though rape did not require proof of murder). In *Seda*, the court held that the defendant could not be convicted of both bank fraud and filing false loan applications because there the filing of false loan applications was "simply a species of bank fraud." 978 F.2d at 782. Here, the international transfers are simply species of financial transactions. The district court confirmed this observation when, in response to a question from the jury, it stated that the domestic money laundering statute required a financial transaction, and that the international money laundering statute required that funds be transferred into the United States from abroad, and that "otherwise the two crimes were the same." Accordingly, we hold that charging both domestic and international money laundering for these same transactions was multiplicitous.

■ Ordinarily, the appropriate remedy is to remand to the district court to vacate

---

place outside the United States or to a place in the United States from or through a place outside the United States—

....

(B) knowing that the monetary instrument or funds ... represent the proceeds of some form of unlawful activity and knowing that

such transportation, transmission, or transfer is designed in whole or in part—

(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity:

....

the multiplicitous counts and to adjust the sentencing accordingly. *See Holmes,* 44 F.3d at 1156 (proper remedy is to remand to district court to vacate multiplicitous counts and adjust sentence). However, as we will discuss below, the jury instruction on domestic money laundering contained substantial errors not present in the charge on international money laundering. As a result, we reverse Roz Ben Zvi's remaining convictions for domestic money laundering, counts 10 and 11, and those charges are dismissed.

### D. *Erroneous Charge on Money Laundering*

During the jury charge, the trial court recited incorrect subsections of the domestic and international money laundering statute. In its charge on domestic money laundering, the district court recited the elements of § 1956(a)(1)(A)(i) in place of § 1956(a)(1)(B)(i); instead of stating that the transaction need occur with knowledge that "the transaction is designed in whole or in part to conceal or disguise the nature" of the proceeds, the court instructed the jury on the entirely different element that the transaction need occur "with the intent to promote the carrying on of specified unlawful activity."

On the international money laundering charge, instead of charging § 1956(a)(2)(B)(i), the district court recited the elements of the domestic laundering section, § 1956(a)(1)(B)(i). This error was less serious; both sections contained the element that the transaction be designed to conceal the proceeds from a specified unlawful activity, although the charge as given excluded the element that the transmittal of funds need be into or outside of the United States.

 We review a jury charge "in its entirety and not on the basis of excerpts taken out of context." *United States v. Vebeliunas,* 76 F.3d 1283, 1290 (2d Cir.) (internal citations omitted), *cert. denied,* 519 U.S. 950, 117 S.Ct. 362, 136 L.Ed.2d 253 (1996). When, as here, the defendants did not object to the charge and the error is trial error and not structural, we review the trial court's charge for plain error. *See United States v. Knoll,* 116 F.3d 994, 999 (2d Cir.1997).

 Under *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), a reversal is required where there is (1) unpreserved error, that (2) is plain; (3) affects a substantial right; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings. *See id.* at 732, 113 S.Ct. 1770; *see also* Fed.R.Crim.P. 52(b). In *Johnson v. United States,* 520 U.S. 461, 469–70, 117 S.Ct. 1544, 1550, 137 L.Ed.2d 718 (1997), the Court held that where there was no showing of a "miscarriage of justice," the fourth prong of *Olano* would not be satisfied. Under the plain error standard, we examine a jury instruction to see if it caused a miscarriage of justice when viewed as a whole and in the context of the entire trial. *See United States v. Reese,* 33 F.3d 166, 172 (2d Cir.1994).

As we stated above, the multiplicitous charging of domestic and international money laundering requires the dismissal of either the domestic or the international counts. Instead of remanding the case so that the district court could dismiss either the domestic or international charges, we dismiss the remaining domestic money laundering counts against Roz Ben Zvi due to the substantial problems with the domestic money laundering instruction. As we have reversed all of the domestic money laundering charges against defendants as either time-barred or multiplicitous, we need not consider further whether the error in the domestic money laundering instruction, in and of itself, amounted to reversible plain error.

 Turning to the error in the charge on international money laundering, we find that it did not rise to the level of plain error. Viewing the instructions in their entirety, we find that the correct elements of international money laundering were twice read by the court to the jury from the indictment, and the jury took the indictment into their jury room deliberations. *See Vebeliunas,* 76 F.3d at 1290 (trial court's insertion of erroneous aspects of crime ameliorated by fact that trial court stated the correct law twice). Moreover, after the jury retired to deliberate, it specifically asked the district court to explain the difference between the two mon-

ey laundering charges. The district court accurately responded that the domestic laundering charge referred to a financial transaction whereas the international laundering charge required that funds be transferred from outside the United States into the United States, and that "otherwise the two crimes were the same." Finally, we note that the laundering transactions alleged in the indictment all involved overseas transfers of funds (a fact to which the parties stipulated). Accordingly, having found that the transfers occurred, the jury necessarily found that they were overseas transfers into the United States.

Based on the foregoing, we find that the erroneous jury instruction on international money laundering could not have resulted in a miscarriage of justice and, therefore, was not plain error.

E. *Omission of Element of Materiality in Tax Count Charge*

█ Roz Ben Zvi claims that his convictions for filing false tax returns, in violation of 26 U.S.C. § 7206(1),[3] must be reversed because the district court did not instruct the jury that the false statements at issue must be material. The instruction read:

In order to sustain its burden of proof ... the government must prove the following four essential elements beyond a reasonable doubt.

. . . .

3. That the defendant Roz Ben Zvi did not believe the returns to be true and correct as to the gross sales and receipts of Josi Jewelry Corporation or as to the personal income of himself.

Because defendants failed to object to the instruction, we review the district court's instruction for plain error under the *Olano* test referred to above.

The omission of materiality from the jury charge was probably not error at all; and, in any event, it was not plain error. This circuit has held that the issue of materiality on

false tax returns is a matter for the court to decide. *See United States v. Klausner,* 80 F.3d 55, 60–61 (2d Cir.1996); *United States v. Greenberg,* 735 F.2d 29, 31 (2d Cir.1984). *But see United States v. Neder,* 136 F.3d 1459, 1464 (11th Cir.1998) (noting that every other circuit addressing the question has held that materiality under § 7206(1) is a question for the jury). Here the jury heard the district court read the indictment and the statute, both of which recite the element of materiality. The district court further instructed the jury that it could find Roz Ben Zvi guilty only if it found the particular misrepresentations contained in the indictment; all of those misrepresentations entailed the failure to report substantial amounts of income and were therefore material as a matter of law. *See Klausner,* 80 F.3d at 60 (test for materiality is whether particular item must be reported in order for taxpayer to assess tax liability correctly).

In *Johnson* and *Knoll,* there was no plain error in the trial court's failure to charge the jury on materiality because the materiality was apparent from the evidence, even though under the statute at issue in those cases materiality is a jury issue. *See Johnson,* at 469–70, 117 S.Ct. at 1550; *Knoll,* 116 F.3d at 1000–02. In light of these decisions, *a fortiori,* we cannot find plain error for lack of a materiality charge when materiality is both an issue for the court and apparent from the evidence.

█ The better practice in false tax return cases is for the district court to make a determination of materiality, and then inform the jury that the alleged misrepresentation, if found, is material under the statute as a matter of law. Such a charge ensures that the question is not left to the jury by implication. The failure of a district court to give such an instruction could result in a wrongful acquittal if the jury decided materiality in the defendant's favor. In the face of a conviction, such a failure could never be prejudicial to a defendant even if the defendant had objected; under the law of this circuit, the

---

**3.** Section 7206(1) provides that a person commits a felony if he "willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written

declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every *material* matter." 26 U.S.C. § 7206(1) (emphasis added).

jury in a false tax return case is not empowered to resolve the question of materiality in a defendant's favor.

Materiality was an issue for the court, and materiality was apparent because the tax return at issue involved the under-reporting of income by thousands of dollars. Accordingly, we affirm Roz Ben Zvi's convictions for filing false tax returns.

## F. *Remaining Claims*

Defendants argue that the substantive wire fraud count could not constitute "specified unlawful activity" under the money laundering statute because it was dismissed for lack of venue. However, the fact that an illegal act cannot be prosecuted does not prevent the act from forming part of the basis for other charges. *See United States v. Wong,* 40 F.3d 1347, 1366–68 (2d Cir.1994) (juvenile offenses can be used as predicates under RICO even though the juvenile conduct is not separately prosecutable); *United States v. Persico,* 832 F.2d 705, 714 (2d Cir. 1987) (RICO charge may be based in part on time-barred predicate acts provided defendant committed one predicate act within the limitations period). The fact that the wire fraud charge itself was dismissed for lack of venue does not preclude its use as the "specified unlawful activity" for money laundering charges.

Defendants also argue that the deletion of count two (for wire fraud) in the redacted indictment and the trial court's instruction regarding the wire transfer element of the wire fraud count constructively amended the indictment against them. They maintain that the deletion of count two deprived the jury of guidance on the elements of wire fraud, and that the district court's instruction on wire fraud allowed consideration of the funds transfers between London, Israel, Switzerland, and the United States, even though only the London transfer was the subject of the wire fraud charge. We disagree.

A constructive amendment occurs when the government's evidence and the jury charge combine to modify essential elements of the charge to the point that " 'there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged by the grand jury.' " *Vebeliunas,* 76 F.3d at 1290 (quoting *United States v. Clemente,* 22 F.3d 477, 482 (2d Cir.1994)). There was no such likelihood in this case. Each of the elements of wire fraud was recited by the district court under the conspiracy charge of count one. Moreover, taken as a whole, the district court's charge clearly indicated which particular wire transfer was at issue.

We also reject defendants' contention that the district court removed from the jury the issue of whether the pre-robbery sale of gold was within the scope of the wire fraud. The charge as presented was fair to both sides, and it appropriately reflected the defense's theory of the case. *See United States v. Allen,* 127 F.3d 260, 264–65 (2d Cir.1997).

Defendants also challenge two evidentiary rulings: first, the admission of the testimony of Alan Martin, attorney for Lloyd's, that he requested a payback agreement because he did not believe defendants' deposition testimony; and second, the admission of an IRS agent's testimony concerning the evidentiary basis for her summary chart. The admission of this evidence was not manifestly erroneous and therefore did not amount to an abuse of discretion. *See United States v. Cruz,* 981 F.2d 659, 662 (2d Cir.1992).

Finally, the district court did not abuse its discretion in denying Luiz Ben Zvi's motion to sever the trial. A defendant must demonstrate severe prejudice amounting to a miscarriage of justice in order to obtain a new trial based on a district court's denial of a motion to sever. *See United States v. Rosa,* 11 F.3d 315, 341 (2d Cir. 1993). Such prejudice cannot be shown in this case. The jury's findings of guilt on some charges and acquittal on others demonstrated its ability to consider each charge against each defendant individually.

## CONCLUSION

We hold that the superseding indictment that charged money laundering for the first time did not relate back to the filing of the original indictment for conspiracy and wire

fraud for statute of limitations purposes. We therefore reverse all of the money laundering convictions against Luiz Ben Zvi and reverse Roz Ben Zvi's conviction for money laundering on counts 5, 8, 9, 13, 16, and 17 and dismiss these counts against both defendants. We reverse the judgment of criminal forfeiture against Luiz Ben Zvi. We also hold that charging both domestic and international money laundering for the same financial transaction was multiplicitous and therefore we reverse the convictions on counts 10 and 11 for domestic money laundering against Roz Ben Zvi and dismiss them. We vacate the judgment of criminal forfeiture against Roz Ben Zvi. We remand the case to the district court to reconsider sentencing, including forfeiture as to Roz Ben Zvi, and its order of restitution. The remaining convictions are affirmed.

Affirmed in part, vacated and remanded in part.