UNITED STATES of America, Appellee,

v.

Adria RODRIGUEZ, also known as "Tata"; Pedro Manuel Quezada, also known as "Pedro Diaz"; Domingo Morisset, also known as "German," also known as "Jose Candeliera," also known as "Jose Colita," also known as "Jose Collada," also known as "Jose Candelier"; Damien Capenan, also known as "Danian Capellano"; Reynalo Caban, also known as "Mafia"; Marylin Conchado, also known as "Mari"; Roberto Delacruz, also known as "Moreno"; Floris Suarez, also known as "Flo"; Tony Liberato; Jessica Jimenez; Tiffany Keith, Judith Monzon, also known as "Miti"; Mercedes Monzon, also known as "Tita"; David Quianes, also known as "David Jimenez," also known as "Raymond Jimenez"; Luis Febres, also known as "Gringo"; Demaris Rolon, also known as "Angie," also known as "Angela Rodriguez," Defendants,

Oscar Monzon, Defendant–Appellant.

Docket No. 01–1644.

United States Court of Appeals,
Second Circuit.

June 25, 2003.

Lawrence D. Gerzog, New York, New York, for Defendant–Appellant.

Meir Feder, Assistant United States Attorney, Southern District of New York, for James B. Comey, United States Attorney for the Southern District of New York (Jay K. Musoff, Assistant United States Attorney, on the brief) New York, New York, for Appellee.

PRESENT: MCLAUGHLIN, LEVAL, and RAGGI, Circuit Judges.

## SUMMARY ORDER

THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, Foley Square, in the City of New York, on the 25th day of June, Two Thousand and Three.

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of conviction entered on December 6, 2001 is hereby AFFIRMED.

Defendant–Appellant Oscar Monzon was found guilty after a jury trial of (1) conspiracy to possess with intent to distribute both cocaine powder and cocaine base ("crack"), the latter in an amount of 50 grams or more, 21 U.S.C. §§ 841(a)(1), 841(b)(1), 846; (2) conspiracy to commit extortion, 18 U.S.C. § 1951; and (3) substantive extortion, *id.* He is presently incarcerated serving concurrent terms of life imprisonment on the narcotics count and twenty-years on each of the extortion counts. In appealing this conviction, Monzon asserts that (1) the evidence adduced at trial was insufficient to support a guilty verdict, (2) both the district court's jury instructions and its verdict form were flawed, (3) defense counsel rendered ineffective assistance, and (4) the district court erred in denying him a downward departure from his sentencing guideline range. We find these arguments without merit and affirm the conviction.

## I. Sufficiency of the Evidence

The Fourteenth Amendment's Due Process Clause "prohibits conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged.'" *Einaugler v. Supreme Court,* 109 F.3d 836, 839 (2d Cir.1997) (quoting *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)). A defendant who challenges the sufficiency of the evidence supporting his conviction bears a heavy burden for, although we review such claims de novo, we must consider the evidence in its totality and in the light most favorable to the government. *See United States v. Henry,* 325 F.3d 93, 103 (2d Cir.2003); *United States v. Desimone,* 119 F.3d 217, 223 (2d Cir.1997). We must affirm the conviction if *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *accord United States v. Desimone,* 119 F.3d at 223.

■ Monzon submits that no rational jury could have found him guilty of a narcotics conspiracy because no drugs were introduced at trial; neither did the government proffer expert testimony or laboratory reports on the subject. This Court has long held that "the absence of an actual sale or seizure of narcotics does not render insufficient the proof of a conspiracy to distribute it." *United States v. Desimone,* 119 F.3d at 223; *United States v. Sureff,* 15 F.3d 225, 228–29 (2d Cir.1994) (upholding conspiracy conviction where cocaine was never explicitly mentioned, no drugs were seized, and there was no direct testimony as to drug transactions). To prove a narcotics conspiracy, the prosecution must establish two elements: (1) an agreement between two or more persons to traffic in the drugs identified in the indictment, and (2) defendant's knowing and intentional membership in that scheme. *United States v. Richards,* 302 F.3d 58, 66 (2d Cir.2002) (quoting *United States v. Story,* 891 F.2d 988, 992 (2d Cir.1989)).

The testimony of Monzon's drug confederates, Pedro Quezada and his wife and drug partner, Adria Rodriguez, sufficed to establish both elements. *See United States v. Abelis,* 146 F.3d 73, 80 (2d Cir. 1998) (holding that reviewing court must

resolve credibility issues in favor of the government). Quezada recounted several occasions in 1995–96 when he and another drug dealer, Jose Luis, traveled to Monzon's apartment in the Bronx and there received directly from defendant a weekly supply of 100 grams of powder cocaine and 62 grams of crack, the latter stamped with Monzon's brand name, "Rambo." On at least one visit to the Bronx apartment, Quezada witnessed Monzon's wife "cooking" cocaine powder into crack. Luis and Quezada sold the crack and powder cocaine received from Monzon on the corner of 13th Street and First Avenue in Manhattan. Adria Rodriguez testified that she first met Monzon at this corner in 1989 when he was then personally selling "Rambo" crack on a daily basis from that location. Even after Monzon moved to Florida in 1996, he continued to profit from the sale of crack and cocaine at 13th Street and First Avenue, demanding that Quezada pay him $2,000 per week in "rent" for the privilege of operating that spot.

Because this accomplice evidence was more than sufficient to support a rational jury in concluding that Monzon had knowingly and intentionally joined in an agreement with two or more other persons to distribute 50 grams or more of crack and an unspecified quantity of powder cocaine, we reject Monzon's due process challenge to his narcotics conviction.

■ Similarly without merit is Monzon's argument that there was insufficient evidence to establish the element of reasonable fear of physical or economic harm necessary to prove extortion. Both Quezada and Rodriguez testified that when Quezada fell behind in the demanded "rent" payments, Monzon, who was then in jail, sent his brother and nephew to threaten Quezada with a baseball bat. Further, Rodriguez testified that she knew Monzon would not hesitate to use violence to protect his drug interests because, in 1989,

she had seen him beat and kick a rival drug dealer who tried to intrude on the 13th Street and First Avenue spot. In the course of that dispute, Rodriguez also saw Monzon draw a firearm, and she concluded that "you can't mess with him, he's serious." Trial Trans. at 78. This evidence established a reasonable fear of both physical and economic harm. *See United States v. Capo*, 817 F.2d 947, 951 (2d Cir. 1987) (en banc) (noting that fear of economic loss is established where victim believes "nonpayment would result in preclusion from or diminished opportunity for some existing or potential economic benefit").

## II. Jury Instructions and Verdict Form

■ Monzon faults the district court's jury instructions for failing to distinguish between the two drugs – crack and powder cocaine – that were the objects of the narcotics conspiracy. In a related argument, he challenges the verdict form for inquiring as to the quantity of crack but not cocaine powder. Monzon also asserts that the district court's overt act instruction misled the jury as to the government's burden of proof.

In considering Monzon's challenge to the jury instructions, we must review the charge as a whole to determine if the jury was accurately advised as to the applicable law. *See United States v. Mitchell*, 328 F.3d 77, 82 (2d Cir.2003) (quoting *United States v. Ben Zvi*, 168 F.3d 49, 58 (2d Cir.1998)). Moreover, because Monzon failed to raise his objections at trial, our review is limited to "plain error." *Id.* To establish plain error, a party must demonstrate (1) error; (2) that is plain; (3) affecting substantial rights; whereupon, (4) the court may exercise its discretion to grant appellate relief, but only if the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings. *See United States v. Crowley*, 318

F.3d 401, 414–15 (2d Cir.2003) (quoting *United Stated v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). Monzon's challenge fails at the first step because he cannot demonstrate error.

The jury charge clearly instructed the jury that the narcotics conspiracy had four objectives: "1) the distribution of crack cocaine; 2) the possession of crack cocaine with the intent to distribute it; 3) the distribution of powder cocaine; 4) the possession of powder cocaine with the intent to distribute it." Trial Tr. at 513. While the jury was correctly instructed that the government was not obliged to prove all the objectives beyond a reasonable doubt, *see United States v. Salameh*, 152 F.3d 88, 147–48 (2d Cir.1998), it was specifically told that if it did not so find, "you . . . must be unanimous as to the object you do find. That is, you must all be in agreement with respect to at least one of the alleged objects of the conspiracy." *Id.* Further, the jury was instructed that if it found a drug conspiracy proved, it would be asked to indicate whether the scheme involved crack, powder cocaine, or both. Far from constituting error, these careful instructions ensured that the jury did not conflate the various conspiratorial objectives nor the two drugs at issue in determining if the government met its burden of proof.

■ Neither did the district court err in asking the jury to respond to a drug quantity inquiry only as to crack. It is undisputed that only the alleged crack quantity had to be proved beyond a reasonable doubt. *See United States v. Thomas*, 274 F.3d 655, 659 (2d Cir.2001) (en banc). To the extent Monzon speculates that a single quantity inquiry may have confused the jury, leading it impermissibly to combine quantities of crack and powder cocaine, we reject this argument in light of the clear wording of the challenged question: "Do

you unanimously find that the amount of 'crack' cocaine involved in the conspiracy was 50 grams or more?" Verdict Form # 4.

■ Similarly without merit is Monzon's assertion that a supplemental instruction advising the jury "that it is not necessary for the government to allege or prove any overt act," Trial Tr. 552, created the misimpression that the government was not required to prove anything. The challenged language accurately states the applicable law, *see, e.g., United States v. Clemente*, 22 F.3d 477, 480 (2d Cir.1994) ("to establish a Hobbs Act conspiracy, the government does not have to prove any overt act"); *United States v. Simmons*, 923 F.2d 934, 953 n. 8 (2d Cir.1991) ("the Government need not plead or prove any overt act to prove a conspiracy to distribute controlled substances"), and the instruction was relevant in Monzon's case because the indictment did plead overt acts in furtherance of the narcotics conspiracy. Moreover, upon reviewing the charge as a whole, we conclude that the district court meticulously delineated the various elements of the charged crimes and clearly emphasized the prosecution's sole burden to prove every element beyond a reasonable doubt.

## III.   Ineffective Assistance of Counsel

■ To establish a Sixth Amendment claim of ineffective assistance of counsel, Monzon must show both that (1) counsel's performance was objectively unreasonable judged by prevailing professional norms, and (2) but for the deficient representation, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *accord United States v. Perez*, 325 F.3d 115, 131 (2d Cir.2003).[1]

1. Generally, an ineffective assistance claim must be made in the first instance in the

district court so that a full factual record can

■ Monzon's complaint about his attorney's decision to stipulate to the existence of the charged drug conspiracy satisfies neither prong of the *Strickland* test. Counsel entered into the challenged stipulation to avoid the prosecution proving the charged conspiracy through the plea allocutions of six of Monzon's confederates. *See United States v. Gallego,* 191 F.3d 156, 168 (2d Cir.1999) (admitting plea allocution of co-conspirator as evidence of the existence of a conspiracy). This strategic decision fell well within the "wide range of reasonable professional assistance" presumed objectively reasonable by reviewing courts. *Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. 2052. In any event, because the alternative evidence of conspiracy was overwhelming, Monzon cannot show that he was prejudiced by the stipulation.

■ To the extent Monzon further complains about defense counsel's cross-examination of Adria Rodriguez, we have long recognized that "[d]ecisions about 'whether to engage in cross-examination, and if so to what extent and in what manner, are … strategic in nature' and generally will not support an ineffective assistance claim." *Dunham v. Travis,* 313 F.3d 724, 732 (2d Cir.2002) (quoting *United States v. Nersesian,* 824 F.2d 1294, 1321 (2d Cir.1987)). The record shows that counsel vigorously cross-examined Ms. Rodriguez, and the mere fact that new counsel identifies alternative avenues of inquiry does not evidence objectively unreasonable representation, for "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Strickland v.*

*Washington,* 466 U.S. at 689, 104 S.Ct. 2052.

## IV. Downward Departure in Sentencing

Monzon submits that the district court mistakenly thought that he would be eligible for parole, but for which error it might have looked more favorably on his application for downward departure. We reject this argument for three reasons: (1) the district court corrected its misstatement about defendant's eligibility for parole before concluding the sentencing proceeding; (2) Congress's decision to eliminate parole would not, in any event, be a factor relevant to guideline departure; and (3) the district court well understood its ability to depart from the guidelines on the specific grounds urged by petitioner but, for the factual and legal reasons stated in some detail, it concluded that no departure was warranted. Under these circumstances, we lack jurisdiction to review the departure denial. *See United States v. Aponte,* 235 F.3d 802, 803 (2d Cir.2000).

For the reasons stated, the judgment of conviction entered December 6, 2001, is hereby AFFIRMED.

---

be developed. We will, however, entertain such a claim on direct appeal where, as in this case, defendant is represented by new counsel on appeal and the basis for the argument is fully developed in the trial record. *See United States v. Salameh,* 152 F.3d 88, 160 (2d Cir.1998).