JOURNAL ENTRY AND OPINION
{¶ 1} The applicant, Michael Belcastro, has applied, pursuant to App.R. 26(B), to reopen this court's judgment in State of Ohio v. MichaelBelcastro (Feb. 26, 2001), Cuyahoga App. No. 77443, which affirmed Mr. Belcastro's convictions and sentences for pandering sexually oriented matter involving a minor and illegal use of a minor in nudity-oriented material. The State of Ohio has filed a brief in opposition. For the following reasons this court denies the application to reopen.
{¶ 2} In 1998, Mr. Belcastro placed an advertisement in Scene Magazine for models. When Ann Helmick, then nineteen years old, responded to the advertisement, he induced her to pose nude for money. Ms. Helmick told a seventeen-year-old friend about this experience. Because the seventeen year old needed money, she and Ms. Helmick went to Mr. Belcastro's condominium in late 1998 and posed nude for him during a thirty-to-forty minute photograph session. Mr. Belcastro videotaped the entire photo session, during which the two females engaged in various sexual activities with each other and Mr. Belcastro.
{¶ 3} During this time in late 1998, Mr. Belcastro allowed Ms. Helmick to stay at his condominium while he was out of town. On one such occasion Ms. Helmick brought her boyfriend with her, and they spent the night at Mr. Belcastro's place. During the night the boyfriend found and watched at least part of the videotape showing Ms. Helmick and the seventeen year old. He took the tape and after several weeks turned it over to the Euclid Police. The police viewed the tape without a search warrant, investigated the matter and learned the seventeen year old's age. Then the police obtained a search warrant for Mr. Belcastro's home and removed boxes of pornographic material, including the undeveloped film from the photo session with Ms. Helmick and the seventeen year old. Subsequently, the Grand Jury issued six indictments which culminated in Mr. Belcastro's above-mentioned convictions.
{¶ 4} Appellate counsel made the following arguments: (1) The trial court erred in admitting the pornographic material confiscated from his residence. (2) The jury charge improperly instructed that pandering sexually oriented material with a minor was a strict liability offense and that mistake in age was not a defense. (3) Trial counsel was ineffective in not arguing the unconstitutionality of the subject statute, R.C. 2907.232 and not objecting to the jury charge. (4) The trial court erred in not imposing the minimum sentence for a first-time offender. In affirming the convictions and sentences, this court noted that although the trial court did err in admitting the pornographic materials, there was no prejudice because the videotape and photographs of the seventeen year old along with testimony of the witnesses, including Mr. Belcastro, established his guilt.
{¶ 5} Mr. Belcastro now maintains that his appellate counsel was ineffective. He should have argued that the police's search of the videotape was improper and that trial counsel was deficient for not moving to suppress the videotape. Mr. Belcastro premises his argument onWalter v. United States (1980), 447 U.S. 649, 65 L.Ed.2d 410,100 S.Ct. 2395.
{¶ 6} In Walter the Supreme Court decided a Fourth Amendment issue on the following facts: In September 1975, "12 large, securely sealed packages containing 871 boxes of 8-millimeter film depicting homosexual activity were shipped by private carrier" from St. Petersburg, Florida to Atlanta, Georgia. 447 U.S. at 651. The boxes were addressed to "Leggs, Inc.", but were accidently shipped to "L' Eggs Products, Inc." There employees opened each of the packages and found individual boxes of film, each of which had suggestive drawings and explicit descriptions of their contents. light, but because the film was so small he could see nothing. The employees then turned the films over to the FBI who viewed them with a projector without obtaining a search warrant. A motion to suppress the films was denied, and the defendants were convicted.
{¶ 7} On appeal the Supreme Court of the United States in a plurality opinion reversed and ruled that the FBI's examination of the film without a search warrant violated the Fourth Amendment and the defendant's expectation of privacy in the films. Justices Stevens issued the opinion of the court and Justice Stewart joined in the opinion. This opinion first noted that the films were properly in the hands of the government. Burdeau v. McDowell (1921), 256 U.S. 465 65 L.Ed. 1048,41 S.Ct. 574, established that the Fourth Amendment does not control private searches or seizures. Thus, even a wrongful search or seizure by a private party does not deprive the government of the right to use such evidence if the private party turns the evidence over to the government. There is "nothing wrongful about the Government's acquisition of the packages or its examination of their contents to the extent chat they had already been examined by third parties." 447 U.S. at 836. Nevertheless, because the scope of a search is limited by the terms of its authorization, the government may not exceed the scope of the private search unless it has the right to make an independent search, e.g., through a search warrant. In this case the justices concluded that because the scope of the search, viewing the films with a projector, exceeded the scope of the private search, a search warrant was required, and the search as conducted was impermissible.
{¶ 8} The justices further reasoned that the owners of the package had an expectation of privacy in their sealed packages. The private search frustrated that expectation only in part; the expectation of privacy remained for the actual viewing of the films. The justices also stated that because the First Amendment could arguably protect the contents of books and the like, the requirements of the Fourth Amendment must be scrupulously observed. The justices explicitly noted that the issue of whether the government would have been required to obtain a warrant had the private party been the first to view them was not before the court. Justice Marshall concurred in the judgment.
{¶ 9} Justices White and Brennan concurred with the judgment, but would nave gone further. They would have held that regardless of whether the private parties had viewed the films, the government needed to obtain a search warrant to view them. These justices believed that a private screening of the films would not have destroyed the owners' expectation of privacy.
{¶ 10} Justices Blackmun, Powell, Rehnquist and the Chief Justice dissented. Their view was that the opening of the sealed packages, revealing the suggestive drawings and the explicit descriptions, completely frustrated the owners' expectations of privacy. Thus, the FBI's viewing of the films did not further compromise the expectation of privacy, and no search warrant was necessary.
{¶ 11} Mr. Belcastro argues that Walter is directly on point. Just as the FBI's viewing of the films without a search warrant violated the owners' expectation of privacy, so too the polices s viewing of the videotape without a warrant violated his expectation of privacy in the tape. The tape should have been suppressed, which was a major piece of evidence. Also without the tape, the police would not have been able to obtain a search warrant, and the prosecution's case would have become baseless. Thus, trial counsel was ineffective for not pursuing the issue, and appellate counsel was deficient for not raising this aspect of trial counsel's ineffectiveness.
{¶ 12} In order to establish a claim of ineffective assistance of appellate counsel, the applicant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington (1984), 466 U.S. 668,80 L.Ed.2d 674, 104 S.Ct. 2052; State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, cert. denied (1990), 497 U.S. 1011, 110 S.Ct. 3258.
{¶ 13} In Strickland the United States Supreme Court ruled that judicial scrutiny of an attorney's work must be highly deferential. The Court noted that it is all too tempting for a defendant to second-guess his lawyer after conviction and that it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Strickland,104 S.Ct. at 2065.
{¶ 14} Specifically, in regard to claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions. The court noted: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones v. Barnes (1983), 463 U.S. 745,77 L.Ed.2d 987, 103 S.Ct. 3308, 3313. Indeed, including weaker arguments might lessen the impact of the stronger ones. Accordingly, the Court ruled that judges should not second-guess reasonable professional judgments and impose on appellate counsel the duty to raise every "colorable" issue. Such rules would disserve the goal of vigorous and effective advocacy. The Supreme Court of Ohio reaffirmed these principles in State v. Allen, 77 Ohio St.3d 172, 1996-Ohio-366, 672 N.E.2d 638.
{¶ 15} Moreover, even if a petitioner establishes that an error by his lawyer was professionally unreasonable under all the circumstances of the case, the petitioner must further establish prejudice: but for the unreasonable error there is a reasonable probability that the results of the proceeding would have been different. A court need not determine whether counsel's performance was deficient before examining prejudice suffered by the defendant as a result of alleged deficiencies.
{¶ 16} In the present case Mr. Belcastro's argument on ineffective assistance of appellate counsel is not well taken. Appellate counsel in the exercise of professional judgment could properly conclude that this argument was too weak to include. Thus, the first element of Strickland
is not fulfilled, and there is not a genuine issue as to the effectiveness of appellate counsel.
{¶ 17} First, Mr. Belcastro's argument is flawed, because Walter is not directly on point. In Walter the employees did not actually view the films. In the present case the boyfriend viewed at least some, if not all, of the videotape. Therefore, this places the present case directly within the "open question" of Justice Stevens' opinion, whether the government would have to obtain a search warrant if the third party had viewed the films. A review of the subsequent case law deriving fromWalter from the Supreme Court of the United States, all the federal circuits courts of appeal and Ohio reveals that this question has not been definitively answered. In fact the Tenth Circuit Court of Appeals inUnited States v. Falcon (C.A. 10, 1985), 766 F.2d 1469, 1475, expressed the view that "Walter is of dubious precedential value." In that case the court upheld listening to an audiotape without a search warrant after the tape, which was marked "Confidential, Do Not Play", was seized pursuant to a consent search. Appellate counsel is not deficient for failing to anticipate developments in the law or failing to argue such an issue.State v. Williams (1991), 74 Ohio App.3d 686, 600 N.E.2d 298; State v.Columbo (Oct. 7, 1987), Cuyahoga App. No. 52715, reopening disallowed (Feb. 14, 1995), Motion No. 55657; State v. Munici (Nov. 30, 1987), Cuyahoga App. No 52579, reopening disallowed (Aug. 21, 1996), Motion No. 71268, at 11-12: "appellate counsel is not responsible for accurately predicting the development of the law * * *." State v. Harey (Nov. 10, 1997), Cuyahoga App. No. 71774, reopening disallowed (July 7, 1998), Motion No. 90859; State v. Sanders (Oct. 20, 1997), Cuyahoga App. No. 71382, reopening disallowed, (Aug. 25, 1998), Motion No. 90861; State v.Bates (Nov. 20, 1997), Cuyahoga App. No. 71920, reopening disallowed (Aug. 19, 1998), Motion No. 91111; and State v. Whittaker (Dec. 22, 1997), Cuyahoga App. No. 71975, reopening disallowed, (July 28, 1998), Motion No. 92795.
{¶ 18} Alternatively, both trial and appellate counsel in the exercise of reasonable professional judgment could have concluded that the boyfriend's viewing of the tape completely frustrated Mr. Belcastro's expectation of privacy in it. The tape actually contained both the first photo session with Ms. Helmick, which Mr. Belcastro had surreptitiously taped, and the second photo session with Ms. Helmick and the seventeen year old. When the boyfriend contacted the police about the tape, he told them that he had a tape depicting a minor engaged in sexual activity which he wanted to turn over to them. This indicated that he had viewed the entire tape. (Tr. Pg. 196.) In Walter Justice Stevens had written that there would be nothing wrongful with the government's examination of the contents of a package "to the extent that they had already been examined by third parties." 447 U.S. 656. Because it appeared that the boyfriend had already examined the entire tape, the government's reviewing of it would not further frustrate Mr. Belcastro's expectation of privacy. Indeed, counsel in the exercise of reasonable professional judgment could have concluded, like the four dissenting justices, that even a partial viewing, revealing the pornographic nature of the videotape, would completely frustrate the expectation of privacy and permit the police to view the tape without a search warrant.
{¶ 19} Moreover, the review of the subsequent case law fromWalter reinforces that conclusion. In State v. Modeen (Apr. 17, 1986), Franklin App. Nos. 85AP-907 and 85AP-908, the adopted son of the defendant took two rolls of negatives from the defendant's home. These negatives depicted nudity and sexual acts with a small boy. After the adopted son turned the negatives over to the police, the police viewed the negatives and had them developed without a search warrant. In upholding the search and distinguishing the case from Walter the Ohio Court of Appeals ruled that the government's search was no greater than the adopted son's search, who "had apparently viewed the film [and] had accurately described the contents * * *." (Slip Op. at 13.) See also,United States v. Snowadzki (C.A. 9, 1984), 723 F.2d 1427, 1430, certiorari denied (1984), 469 U.S. 839, "The courts have never indicated that the government conducts a `search' by reading documents in its possession." United States v. Bonfiglio (C.A. 2, 1983), 713 F.2d 932
— once the government had properly obtained the audio tape, it could listen to it without obtaining a search warrant, because the notes on the tape compromised the owner's expectation of privacy. United Statesv. Knoll (C.A. 2, 1997), 116 F.3d 994, certiorari denied sub nom. Gleavev. United States (1994), 513 U.S. 1015 — Files showing perjury and falsification had been burglarized and turned over to the government; the court ruled that the government could examine the contents of the packages to the extent that they had been examined by third parties.
{¶ 20} In United States v. Jenkins (C.A. 5, 1995), 46 F.3d 447, an employee in a pornographic film ring turned copies of such films over to the FBI who viewed them without a search warrant. In upholding the search the court distinguished Walter on the grounds that the employee had the authority and right to view the films and give consent to their viewing. In Unites States v. Richards (C.A. 5, 1981), 638 F.2d 765, certiorari denied (1981), 454 U.S. 1097, the Fifth Circuit Court of Appeals also questioned the value of Walter because there was no clear majority. In that case the appellate court ruled that once a legal intrusion has been made, a second intrusion by state agents, who know the results of the first intrusion, does not violate the Fourth Amendment. The Seventh Circuit also wondered about the scope of Walter in United States v.Eschweiler (C.A. 7, 1984) 745 F.2d 435, certiorari denied (1985),469 U.S. 1214; in that case the court ruled that a search warrant was not needed to seize a safe deposit key which was found in an envelope marked safe deposit key. In Evans v. United States (C.A. 8, 2000), 200 F.3d 549, certiorari denied (1992), 506 U.S. 988, and United States v. Peter (C.A. 8, 1996), 92 F.3d 768, the Eighth Circuit ruled that Walter did not require the government to get a second search warrant to listen to an audio tape or to develop film that had been seized pursuant to a search warrant. In summary, a review of Walter's progeny would give an attorney very little hope of succeeding on the issue.
{¶ 21} Thus, following the admonition of the United States Supreme Court that a court should not second guess the reasonable professional judgments of counsel, this court rules that appellate counsel was not ineffective for not arguing the Walter issue.
{¶ 22} Mr. Belcastro's second argument concerning the state's failure to respond to a motion for a bill of particulars is meritless. He has not established any prejudice relating to this point, and appellate counsel was not ineffective for failing to raise the issue.
Accordingly, this court denies the application to reopen.
PATRICIA A. BLACKMON, and ANN DYKE, J., CONCUR.