UNITED STATES of America, Appellee,

v.

David R. KNOLL, Defendant–Appellant.

No. 843, Docket 95–1267.

United States Court of Appeals,
Second Circuit.

Argued Feb. 15, 1996.

Decided July 7, 1997.

Western District of New York, Buffalo, NY), for Appellee.

Before: WALKER and CALABRESI, Circuit Judges.*

WALKER, Circuit Judge.

Defendant-appellant David R. Knoll appeals from a decision and order entered April 28, 1995, in the United States District Court for the Western District of New York (William M. Skretny, *Judge*), denying Knoll's motion to suppress evidence introduced against him at trial. The district court issued its decision and order on remand from this court following Knoll's appeal from a judgment entered September 28, 1992, convicting him of one count of aiding and abetting the making of a material false statement to a department of the United States in violation of 18 U.S.C. §§ 1001 and 2. We affirm the district court's evidentiary ruling.

Knoll also challenges the validity of his conviction under *United States v. Gaudin*, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), decided while this appeal was pending, because the jury did not decide the question of materiality in convicting him as *Gaudin* requires. We affirm Knoll's conviction because the failure to submit materiality to the jury did not "seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 736, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993).

I

The facts pertaining to this appeal are described in the district court's opinion denying Knoll's pre-trial motion to suppress, *United States v. Gleave*, 786 F.Supp. 258 (W.D.N.Y.1992), and in our prior opinion remanding to the district court for further consideration of Knoll's suppression motion, *United States v. Knoll*, 16 F.3d 1313 (2d Cir.) ("*Knoll I*"), *cert. denied*, 513 U.S. 1015, 115 S.Ct. 574, 130 L.Ed.2d 490 (1994), familiarity with which is assumed.

Stephen L. Braga, Washington, DC (Robert J. McGahan, Miller, Cassidy, Larroca & Lewin, Washington, DC, on the brief), for Defendant–Appellant.

Denise E. O'Donnell, First Assistant United States Attorney, Buffalo, NY (Patrick H. NeMoyer, United States Attorney for the

* The Honorable J. Daniel Mahoney, who was a member of the panel, died on October 23, 1996, and the appeal is being decided by the remaining two members of the panel, who are in agreement. *See* Local Rule § 0.14(b). Judge Mahoney made a substantial contribution to Parts I and II(A) of this opinion before his death.

On February 22, 1990, Knoll was indicted on, among other things, one count of aiding and abetting his co-defendant Ted W. Gleave in making a material false statement to a department of the United States in violation of 18 U.S.C. §§ 1001 and 2 ("Count Eight").[1] Count Eight charged that, in June 1987, Knoll assisted Gleave in the preparation of a financial statement for the United States Department of Justice ("DOJ"), in which Gleave falsely stated that he did not have a savings account. *Knoll I*, 16 F.3d at 1317. In fact, "Gleave and Knoll went together to the Cayman Islands [in 1982] and there opened two bank accounts: a personal account in Gleave's name ... and a corporate account in the name of soon-to-be-formed [company] Atlantis International, [Ltd.]." *Id.* at 1316.

The government's case against Knoll was based in part on information obtained from files stolen from Knoll's law office. The files were purloined during a burglary orchestrated in June 1986 by Timothy Ernle, a then-incarcerated felon. *Id.* at 1317. Following the burglary, Ernle contacted Assistant United States Attorney ("AUSA") Anthony Bruce and informed AUSA Bruce that Ernle could provide evidence of illegal activity by Knoll. *Id.* Ernle's girlfriend, Patricia Devany, then delivered to AUSA Bruce various documents and tapes that she and Ernle's associate, Diane Brown, had removed from the stolen files. *Id.; United States v. Knoll*, No. 90–CR–33S–01, slip op. at 6 (W.D.N.Y. Apr. 28, 1995) ("*Knoll II* "). After receiving the delivery, AUSA Bruce informed Ernle that he was disappointed with the materials and told Ernle he would have to "get [him] more information." *Knoll I*, 16 F.3d at 1320; *Knoll II*, slip op. at 12. Devany then turned over additional documents recovered from the original burglary, including two letters addressed to Barclays Bank International Limited regarding the accounts in the Cayman Islands. These letters ultimately led to the indictments of Knoll and Gleave.

Knoll filed a pre-trial motion to suppress the evidence recovered from his stolen files, arguing that its use violated his Fourth Amendment right to be free from unreasonable searches and seizures. *Gleave*, 786 F.Supp. at 282. The district court held that Knoll suffered no Fourth Amendment violation because the government did not participate in the burglary. *See id.* at 286–89. The district court also rejected Knoll's argument that the government was required to obtain a search warrant in order to read the documents after they were turned over to the government by Ernle and Devany. *See id.* at 289–91.

The case proceeded to trial. In charging the jury on Count Eight, the district court, in accordance with settled Second Circuit law, *see United States v. Elkin*, 731 F.2d 1005, 1009 (2d Cir.1984), *overruled by United States v. Ali*, 68 F.3d 1468, 1475 (2d Cir. 1996), did not submit to the jury the question of the materiality of the false statement and instructed the jury that the court determined that "the facts charged in the indictment are material facts." Knoll did not object to this instruction. The jury convicted Knoll on Count Eight.

Knoll appealed, reasserting the Fourth Amendment claim that he raised in his pre-trial motion to suppress. We agreed with the district court that the burglary of Knoll's office occurred without the involvement of the government, and thus did not implicate the Fourth Amendment. However, we concluded that the search of the stolen files following the burglary was an event separate from the burglary. *See Knoll I*, 16 F.3d at 1319 (noting that the "search" at issue involved "specific rummaging through boxes of files that had earlier been stolen from Knoll's law office"). Because the record left open the possibility that AUSA Bruce requested that Ernle produce additional documents, we

---

**1.** 18 U.S.C. § 1001 provided in pertinent part:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same

to contain any false, fictitious or fraudulent statement or entry, shall be fined ... or imprisoned not more than five years, or both.

18 U.S.C. § 1001 (1990), *amended by* 18 U.S.C. § 1001 (Supp.1996). Section 1001 was completely revised in 1996. *See* False Statements Accountability Act of 1996, Pub.L. No. 104–292, § 2, 110 Stat. 3459 (1996).

were concerned that Ernle and Devany might have been acting as agents for the government when they searched Knoll's files. *Id.* at 1319–20 ("While it appears all the files had already been taken from Knoll's office [when Ernle and AUSA Bruce spoke], it is not clear from the record that they had necessarily been *opened.*"). Accordingly, we remanded, instructing the district court to conduct a hearing to determine whether the object of the search had been completed, and Knoll's reasonable expectation of privacy in the files breached, before AUSA Bruce's request for additional documents. *Id.* at 1320–21.

On remand, the district court held a hearing and concluded that the search of Knoll's files was completed before AUSA Bruce asked Ernle for more information. Specifically, the district court found that Devany and Brown had searched through each of the stolen files immediately after the burglary, removing documents from envelopes and files, looking at letters, listening to tape recordings, and separating and segregating documents, prior to Ernle's initial contact with AUSA Bruce. *Knoll II,* slip op. at 10–11. The district court therefore concluded that the object of the search had been completed, and Knoll's reasonable expectation of privacy breached, before any governmental involvement in the case, thereby placing the search beyond the purview of the Fourth Amendment. *Id.* at 11–12. Knoll once again appealed.

■ On June 19, 1995, two months after the district court's decision on the remanded suppression issue and one month after Knoll filed his notice of appeal, the Supreme Court decided *Gaudin.*[2] The Court held in *Gaudin* that the failure to submit the question of materiality to the jury in a § 1001 prosecution violates a defendant's "right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with

which he is charged." *Gaudin,* 515 U.S. at ——, 115 S.Ct. at 2320.[3] Knoll raised the *Gaudin* issue in a 28 U.S.C. § 2255 motion filed with the district court on September 11, 1995, *United States v. Knoll,* No. 90–CR–335–01, slip op. at 1 (W.D.N.Y. Jan. 17, 1996) ("*Knoll III* "), and informed this court of his pending § 2255 motion in the brief he filed with this court on September 13, 1995. Br. for Def.-Appellant at 50 n.22. After the district court denied Knoll's § 2255 motion on the ground that a resolution of this appeal with respect to the suppression issue in Knoll's favor would render his motion moot, *see Knoll III,* slip op. at 3, Knoll moved this court for leave to file a supplemental brief raising the *Gaudin* issue. We granted the motion, consolidating Knoll's *Gaudin* claim with his Fourth Amendment claim on appeal.

II

A. *Knoll's Fourth Amendment Claim*

The district court held an evidentiary hearing and concluded that the search of Knoll's files was completed prior to the government's involvement in the case. This is precisely the inquiry that we requested in *Knoll I.* Accordingly, we will not disturb the district court's conclusion unless it rests upon clearly erroneous factual findings. *See United States v. Brown,* 52 F.3d 415, 420 (2d Cir. 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 754, 133 L.Ed.2d 701 (1996).

■ The district court's findings were based largely on its assessment of the credibility of the conflicting testimony of the witnesses. We find no error in the court's decision to discount portions of Ernle's testimony and credit instead the testimony of Devany and Brown. *See United States v. Davis,* 967 F.2d 84, 86 (2d Cir.1992) ("[T]he trial court is in a unique position to evaluate witnesses' credibility...."). We therefore

---

2. The Supreme Court granted certiorari in *Gaudin* on January 6, 1995. *See* 513 U.S. 1071, 115 S.Ct. 713, 130 L.Ed.2d 621. The grant of certiorari was four months after the district court's hearing on remand from *Knoll I* and four months before release of its decision on the remanded suppression issue.

3. The Court in *Gaudin* did not decide whether materiality is an element of a § 1001 offense since the government conceded the point. *Gaudin,* 515 U.S. at ——, 115 S.Ct. at 2320 (Rehnquist, C.J., concurring). We recently held that materiality is an element of a § 1001 offense. *United States v. Ali,* 68 F.3d 1468, 1475 (2d Cir.1995).

affirm the district court's conclusion that no Fourth Amendment violation occurred because Ernle, Devany, and Brown were not acting as agents of the government when they searched Knoll's files and Knoll's reasonable expectation of privacy in the files had been defeated before any government involvement.

■ We also reject Knoll's contention that the government's continued possession of the files after they were turned over to AUSA Bruce constituted an illegal seizure. This argument was not raised in the district court, *see* Br. of Def.-Appellant at 42 n.20, and thus we review this argument pursuant to Fed. R. Crim P. 52(b) for plain error. We find no error at all, much less plain error in the government's continued possession of the files. The government was entitled to retain and hold for subsequent use the evidence in its possession as a result of the private search in this case. *See Walter v. United States,* 447 U.S. 649, 656, 100 S.Ct. 2395, 2401, 65 L.Ed.2d 410 (1980) ("[T]here was nothing wrongful about the Government's acquisition of the packages or its examination of their contents to the extent that they had already been examined by third parties.") (plurality opinion of Stevens, J.); *Burdeau v. McDowell,* 256 U.S. 465, 476, 41 S.Ct. 574, 576, 65 L.Ed. 1048 (1921).

### B. *The Claim of Gaudin Error*

■ Knoll challenges the validity of his conviction in light of the failure of the trial judge to submit the question of materiality to the jury as subsequently required by *Gaudin.* This challenge is raised before this court in a supplemental brief filed after the district court denied his § 2255 motion. In the unique procedural posture of this case, we choose to exercise our discretion and review the *Gaudin* error as if it were raised

for the first time on direct appeal instead of on a collateral challenge to his conviction.

The parties agree that the district court's failure to submit to the jury the question of the materiality of Gleave's false statement violated Knoll's right to have a jury determine, beyond a reasonable doubt, his guilt as to each element of the charged offense. *See Gaudin,* 515 U.S. at ——, 115 S.Ct. at 2320. The only issue on appeal is whether the district court's error requires reversal. The Supreme Court recently addressed this precise issue in *Johnson v. United States,* —— U.S. ——, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), and *Johnson* controls our analysis in this case.

### 1. *Johnson v. United States*

In *Johnson,* the Supreme Court addressed the issue of the appropriate standard for reviewing on direct appeal a *Gaudin* error that occurred at trial without objection by the defendant.[4] Johnson was indicted for perjury after testifying falsely before a grand jury as to the source of funds for various real estate purchases. At trial, in accordance with settled Eleventh Circuit law, the district court instructed the jury that the element of materiality was a question for the judge to decide. Johnson did not object. Before Johnson's appeal, the Supreme Court decided *Gaudin.* On appeal, the Court of Appeals for the Eleventh Circuit reviewed for plain error under Fed. R. Crim P. 52(b)[5] and declined to reverse the conviction because the error did not affect Johnson's "substantial rights." *See Johnson,* —— U.S. at ——, 117 S.Ct. at 1547.

The Supreme Court granted certiorari to resolve the circuit split between the Ninth Circuit's *en banc* decision in *United States v. Keys,* 95 F.3d 874, 880 (9th Cir.1996), *vacated,* —— U.S. ——, 117 S.Ct. 1816, 137

---

**4.** The Supreme Court did not decide in *Gaudin* whether, in a case in which the judge decided the issue of materiality, the government should be given the opportunity to show that the error was harmless. Noting that "there is a 'strong presumption' that a constitutional violation will be subject to harmless-error analysis," three concurring Justices in *Gaudin* thought harmless-error analysis should apply. 515 U.S. at ——, 115 S.Ct. at 2321 (Rehnquist, C.J., concurring).

**5.** Rule 52 states:

Rule 52. Harmless Error and Plain Error
(a) Harmless Error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.
(b) Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

L.Ed.2d 1025 (1997), which held that unpreserved *Gaudin* error is reviewed on direct appeal under Rule 52(a), and the Eleventh Circuit's decision holding that plain error review under Rule 52(b) is the correct standard. *Johnson,* —— U.S. at ——, 117 S.Ct. at 1548. The Court held that Rule 52(b) set forth the correct standard. The Court rejected Johnson's argument that the *Gaudin* error was "structural" and therefore outside the scope of Fed.R.Crim.P. 52(b). The Court noted that "Rule [52(b) ] by its terms governs direct appeals from judgments of conviction in the federal system, and therefore governs this case." *Johnson,* —— U.S. at ——, 117 S.Ct. at 1548.

Thus, the Court applied plain error review under Rule 52(b) as outlined in *United States v. Olano,* 507 U.S. 725, 732–37, 113 S.Ct. 1770, 1776–80, 123 L.Ed.2d 508 (1993). Under the *Olano* test, "before an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.' " *Johnson,* —— U.S. at ——, 117 S.Ct. at 1549 (quoting *Olano,* 507 U.S. at 732, 113 S.Ct. at 1776–77). If these three conditions are met, "an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotations omitted).

The Court found that there was "error" under the first prong of *Olano* because *Gaudin* applies retroactively on direct review and the trial court erred by failing to submit the question of materiality to the jury. *Johnson,* —— U.S. at ——, 117 S.Ct. at 1549. In finding that the second prong of *Olano* was satisfied, the Court rejected the government's argument that "petitioner should have objected to the court's deciding the issue of materiality, even though near-uniform precedent ... held that course proper" and held that "it is enough that an error be 'plain' at the time of appellate consideration" even if it was not plain at the time of trial. *Johnson,* —— U.S. at ——, 117 S.Ct. at 1549.

Under the third prong of *Olano,* the "plain error" must also "affect substantial rights." 507 U.S. at 735, 113 S.Ct. at 1778. Johnson argued "that if an error is so serious as to

defy harmless-error analysis [because it is a 'structural' error], it must also 'affect substantial rights.' " *Johnson,* —— U.S. at ——, 117 S.Ct. at 1549. A "structural" error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991); *see Peck v. United States,* 106 F.3d 450, 454 (2d Cir. 1997). The Court noted that it has "found structural errors only in a very limited class of cases." *Johnson,* —— U.S. at —— – ——, 117 S.Ct. at 1549–50; *see Fulminante,* 499 U.S. at 309–10, 111 S.Ct. at 1264–65 (discussing five constitutional errors that are structural); *Sullivan v. Louisiana,* 508 U.S. 275, 281–82, 113 S.Ct. 2078, 2082–83, 124 L.Ed.2d 182 (1993) (adding a sixth). The Court declined to resolve whether the error in *Johnson* "fit[ ] within this limited class of cases" because, even if the *Gaudin* error "affected substantial rights," the error did not satisfy the final requirement of *Olano.* *Johnson,* —— U.S. at ——, 117 S.Ct. at 1550.

The final requirement of *Olano* requires an appellate court to determine whether the forfeited error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings before it may exercise its discretion to correct the error." *Id.* (internal quotations omitted). In Johnson's case, the evidence supporting materiality was "overwhelming." *Id.* The grand jury was investigating her boyfriend's alleged narcotics activity and the disposition of the proceeds of that activity, including the possible concealment of such proceeds as real estate investments. Johnson presented no plausible argument that lying about the source of money to improve her home was "somehow not material to the grand jury investigation." *Id.* The Court concluded that there was no basis for finding that the error satisfied the final prong of *Olano,* stating:

> On this record there is no basis for concluding that the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." Indeed, it would be the reversal of a conviction such as this which would have that effect. "Reversal for error, regardless of

**1000**

its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it." R. Traynor, *The Riddle of Harmless Error* 50 (1970). No "miscarriage of justice" will result here if we do not notice the error, *Olano*, 507 U.S. at 736, 113 S.Ct. at 1779, and we decline to do so.

*Johnson*, —— U.S. at ——, 117 S.Ct. at 1550.

2. *Applying Johnson to Knoll's Claims*

Despite the near identity of the issue in *Johnson* and this appeal, Knoll contends that *Johnson* does not govern our decision. He asserts that under our decision in *United States v. Tillem*, 906 F.2d 814 (2d Cir.1990), Rule 52(b) plain error review is inappropriate where an objection at trial would have been futile in the face of clearly settled law. He contends that *Johnson* does not address the "question of how Rule 52 should be applied when a 'solid wall of circuit authority' would have made an objection futile at trial." Letter from Attorney Stephen L. Braga filed pursuant to Fed. R.App. P. 28(j) at 4 (June 3, 1997) (quoting *United States v. Keys*, 95 F.3d at 878). Instead, Knoll argues that our review is governed by Rule 52(a). We disagree.

Knoll's argument that *Johnson* does not address whether Rule 52(a) or 52(b) provides the applicable standard when a "solid wall of circuit authority" makes the objection at trial futile is meritless. Knoll relies heavily on the Ninth Circuit's decision in *Keys*. In *Keys*, the Ninth Circuit, sitting *en banc*, addressed the same materiality question at issue in this case and in *Johnson*. *Keys* held that Rule 52(a) governs appellate review of unpreserved *Gaudin* error on direct appeal because "where a defendant faced with a solid wall of authority endorsing a jury instruction acquiesces in or fails to object to it, that defendant is entitled on appeal to the benefit of the new rule without being held to plain error standards." *Keys*, 95 F.3d at 880. Knoll's reliance is misplaced; he fails to acknowledge that the Supreme Court expressly granted certiorari in *Johnson* to resolve the conflict between the Eleventh Circuit's application of Rule 52(b) to *Gaudin* error and the Ninth Circuit's application of Rule 52(a). *Johnson*, —— U.S. at ——, 117 S.Ct. at 1548.

The Court resolved the conflict in favor of Rule 52(b) and vacated and remanded the judgment in *Keys* for further consideration in light of *Johnson*. *United States v. Keys*, —— U.S. ——, 117 S.Ct. 1816, 137 L.Ed.2d 1025 (1997). Knoll's argument that *Johnson* is not applicable because the Eleventh Circuit had no rule concerning a defendant's failure to object when faced with a "solid wall of circuit authority" is undercut by the Court's express agreement with the petitioner in Johnson that "the law at the time of trial was settled." *Johnson*, —— U.S. at ——, 117 S.Ct. at 1549. Application of Rule 52(a) in this case would conflict both with *Johnson* and governing Second Circuit precedent.

Knoll's assertion that Second Circuit precedent requires review under Rule 52(a) is frivolous. *See United States v. Ballistrea*, 101 F.3d 827, 835 (2d Cir.1996) ("[T]his Court can reverse only for 'plain error'" when a defendant did not timely object to *Gaudin* error at a trial occurring prior to the decision in *Gaudin*), *cert. denied*, —— U.S. ——, 117 S.Ct. 1327, 137 L.Ed.2d 488 (1997); *United States v. Viola*, 35 F.3d 37, 42 (2d Cir.1994) (holding that Rule 52(b) is applicable when source of plain error is a supervening decision), *cert. denied*, 513 U.S. 1198, 115 S.Ct. 1270, 131 L.Ed.2d 148 (1995); *United States v. Malpeso*, 115 F.3d 155, 165 (2d Cir.1997) (applying "modified" plain error standard of *Viola* to alleged error under supervening decision in *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995)). In particular, Knoll's reliance on our decision in *Tillem* is misplaced. That case does not stand for the proposition that review under Rule 52(a) is appropriate when an objection would be futile at trial. In *Tillem*, "there was no well-settled Circuit rule" and our decisions in the area "were far from consistent." 906 F.2d at 825. Thus, we applied plain error review under Rule 52(b), not ordinary review applicable to preserved error. The other cases relied upon by Knoll are similarly unavailing because they address the issue of whether a change in law applies retroactively or whether an appellant is barred from raising a claim of error for the first time on appeal, not the appropriate standard of review. *See, e.g., Ingber v. En-*

*zor,* 841 F.2d 450, 454–55 & n. 1 (2d Cir.1988) (allowing appellant to raise new rule of substantive law on collateral attack); *United States v. Scarpa,* 913 F.2d 993, 1019–20 (2d Cir.1990) (applying Rule 52(b) in accord with *Tillem* ); *United States v. Liguori,* 438 F.2d 663, 665 (2d Cir.1971) (appellees not barred from raising new rule of law because objection at trial would have been futile). In citing these cases, Knoll confuses the issue of whether an appellant is barred from raising an argument with the issue of what standard of review governs our decision if the argument is not barred.

Knoll argues in the alternative that a "modified" plain error review under Rule 52(b) applies to his case under our decision in *Viola. See* 35 F.3d at 42. In *Viola,* we held that "[w]hen a supervening decision alters settled law, the three *Olano* conditions for reviewing plain error under Rule 52(b) [error, plain, affecting substantial rights] still must be met, but with one crucial distinction: the burden of persuasion as to prejudice (or, more precisely, lack of prejudice) is borne by the government, and not the defendant." *Id.* There is no need for us to address this argument, however, because we resolve this appeal without reaching possible issues raised by the third prong of *Olano.*

■ As in *Johnson,* the first two prongs of *Olano* are satisfied in this case. The failure to submit materiality to the jury was "error" and the error is "plain" at the time of appellate consideration in this case. Following the Supreme Court's lead in *Johnson,* we decline to address *Olano's* third prong because even if Knoll satisfies the third prong of *Olano,* Knoll fails to satisfy *Olano's* final requirement that the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Olano,* 507 U.S. at 732, 113 S.Ct. at 1776 (quoting *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985)).

This requirement, not expressly set forth in Rule 52(b), "guide[s] the exercise of remedial discretion [by courts of appeal] under Rule 52(b)." *Id.* at 736–37, 113 S.Ct. at 1779 (discussing requirement and its implicit codification in Rule 52(b)); *see United States v. Young,* 470 U.S. 1, 16 n. 14, 105 S.Ct. 1038,

1047 n. 14, 84 L.Ed.2d 1 (1985). This requirement is not discussed in many of our prior cases, *see, e.g., United States v. Bonito,* 57 F.3d 167, 171 (2d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 713, 133 L.Ed.2d 667 (1996), because a court need not reach the issue unless *Olano's* first three conditions are satisfied. *But cf. Ballistrea,* 101 F.3d at 835.

The facts of this case do not satisfy the final requirement of *Olano.* As we discussed in *Knoll I,* in 1987, DOJ sought to collect an outstanding $6,000 criminal fine owed by Gleave as a result of prior unlawful activity. On June 2, 1987, Knoll and Gleave met with DOJ personnel and provided information to complete a "Financial Statement of Debtor" form. *Knoll I,* 16 F.3d at 1317. The form states that "[t]he principal purpose for gathering this information is to evaluate your capacity to pay the Government's claim or judgment against you." By special interrogatory, the jury identified the following question and answer on the financial form as being false in convicting Knoll on Count Eight of the indictment:

31. Q. Do you have a savings account?

A. No.

We have no doubt that the knowledge that Gleave maintained this account would be material to the DOJ's efforts to collect the fine. We found in *Knoll I* that there was "sufficient proof for the jury to find the Cayman account was an unrevealed savings account." *Knoll I,* 16 F.3d at 1322. The falsely completed financial form reflected that Gleave had no assets to pay the fine. Knoll raises no plausible argument that concealing a savings account is not a material statement when provided on a form whose express purpose is to determine the availability of assets to satisfy a criminal fine.

Instead of confronting the materiality point directly, Knoll recycles arguments resolved against him in *Knoll I.* Knoll contends that there is an issue of whose money was actually in the account. This exact argument was rejected in *Knoll I,* 16 F.3d at 1322 ("Ample proof existed ... to overcome appellants' arguments that there was an insufficient connection between Gleave and the

funds in the account to charge him with ownership."). Knoll's assertion that the account was not a savings account fails because "[n]o good reason is advanced for overturning th[e] jury finding" that "the account was best categorized as a savings account." *Id.* We do not discuss Knoll's role in the making of the false statement because "[s]ufficient evidence surely existed for the jury to find Knoll guilty as a principal for causing Gleave's false financial statement." *Id.* at 1323. In sum, there is no basis for us to reexamine arguments expressly rejected by a prior panel of this court.

We are unable to discern any basis for finding that concealing this account was somehow not material when made to an agency seeking to collect a fine. Thus, we are unable to conclude that in not submitting the materiality issue to the jury "the error seriously affected the fairness, integrity or public reputation of judicial proceedings."

## CONCLUSION

We affirm the district court's ruling that appellant's Fourth Amendment rights were not violated. We also hold that because the failure to submit the issue of materiality to the jury did not "seriously affect the fairness, integrity or public reputation of judicial proceedings," it need not be corrected under Rule 52(b). The judgment of conviction is affirmed.