OPINION OF THE COURT
Kenneth R. Fisher, J.
The defendant stands charged in a 43 count indictment with possessing a sexual performance by a child, in violation of Penal Law § 263.16, in his computer. Each of the 43 counts are identical, with the exception that a different image is alleged in each count, corresponding to a different computer file name. Defendant moves to suppress the evidence against him on the ground that the computer on which these images were found was seized without a warrant by the police, and on the further ground that, immediately prior to the seizure, which occurred without a warrant, the police participated in a warrantless search of the files. The motion to suppress is also made on the ground that the search warrant application presented to the issuing judge the day following was tainted by allegations that are a fruit of the prior warrantless search and seizure of the computer.
The facts are not disputed, and therefore a hearing is not necessary. In early December 2001, the defendant experienced difficulty rebooting his computer, and hired Patrick Mulrooney to repair it. Mr. Mulrooney, owner of MGM Technology Group, Inc., went to the defendant’s residence at 235 Paddy Hill Drive in the Town of Greece to pick up and repair the computer. Mulrooney tried to turn the computer on while at the defendant’s residence, but the computer would not boot up. As Mulrooney was leaving defendant’s residence with the computer and a box of defendant’s CD’s, the defendant told him, “[not in these exact words] you’re going to see weird things on the D drive because my brother-in-law has a sick sense of humor.”[1]
Mulrooney began repair work on the computer on December 7, 2001, locating viruses in 14 locations on the D drive and in 24 locations on the C drive. After some repair work, Mulrooney was able to reboot the computer, and immediately discovered that a number of the files were labeled with pornographic titles. During the repair work, Mulrooney discovered a folder titled *718 “xxx,” which he opened, finding “pages of file names describing children performing sexual acts.” Remembering what the defendant had said about “weird things” on the D drive, Mulrooney discovered several other files in a separate “MPG” folder having “pornographic titles with a good portion of these titles having titles describing children performing sexual acts.” Mulrooney looked at several of the files, and discerned that “they contained children between the ages of 10 and 15 naked and/or performing sexual acts.”
Mulrooney called the Irondequoit Police Department and spoke with Captain Mark Bonsignore. He told Bonsignore of what he found, and Bonsignore told Mulrooney that an investigator would come by the following Monday. When the police showed up at Mulrooney’s place of business on December 10, 2001, Mulrooney “showed them Mr. Emerson’s computer and I opened several files which contained child pornography.” Mulrooney “then shut down the computer and turned the computer and the box containing the CD’s over to Officer Degnan.” A search warrant was obtained the next day authorizing the seizure and search of the computer. Mulrooney’s affidavit, quoted above, was the primary basis for issuance.
Using details gleaned from the discovery package provided to defendant by the prosecution, which indicate the last access date concerning the computer files in question, defendant contends that the search on December 10th in the presence of two Irondequoit law enforcement officers, Officer Degnan and Captain Bonsignore, exceeded the scope of Mulrooney’s private search on December 7th. Defendant avers that 18 “xxx” files and six “MPG” files were accessed on December 7th by Mulrooney himself, and that six “xxx” files and 31 “MPG” files were accessed in front of police personnel on December 10th, thus exceeding Mulrooney’s private viewing of only six “MPG” files. Defendant avers further that the viewing of the files on December 10th in the presence of Bonsignore and Degnan was “undoubtedly at their direction,” thus constituting an official search subject to Fourth Amendment scrutiny. Moreover, the defendant challenges the warrantless seizure of the computer immediately thereafter by Bonsignore and Degnan, their asportation of it to the station house, and the subsequent warrant application the next day was a fruit of the unlawful search of the computer at Mulrooney’s place of business on December 10th. Additionally, defendant predicates the seizure of the computer and the transporting of it to the station house without a warrant as a predicate taint requiring suppression of the evidence gathered during execution of the search warrant.
*719 A. Mulrooney’s Private Search on December 7th is Not Subject to Fourth Amendment Scrutiny
The Fourth Amendment prohibition against unreasonable searches and seizures “proscrib[es] only governmental action; it is wholly inapplicable ‘to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.’ ” (United States v Jacobsen, 466 US 109, 113-114 [1984], quoting Walter v United States, 447 US 649, 662 [1980] [Blackmun, J., dissenting]; see People v Adler, 50 NY2d 730, 736-737 [1980] [“well settled that a search by a private person, even an unlawful search, does not implicate Fourth Amendment considerations”].) The defendant has never alleged, nor does anything in the record support, that the December 7th search by Mulrooney was in any manner infected by governmental involvement. Accordingly, Mulrooney’s discovery of contraband, i.e., images of child pornography in violation of the statute, cannot be the subject of suppression, and the court does not understand defendant’s motion papers to seek the same. (United States v Crowley, 285 F3d 553, 559 [4th Cir 2002] [“The Fourth Amendment is not triggered when a private party initiates a search and contacts police after evidence is discovered”]; People v Powless, 298 AD2d 987 [4th Dept 2002].[2]
B. Mulrooney’s Reopening of the Computer Files in the Presence of Captain Bonsignore and Officer Degnan
Defendant’s contention that Mulrooney’s conduct in opening the computer files on December 10th, when Captain Bonsignore and Officer Degnan came to his place of business, does not warrant a hearing even if his display of computer files to the officers came at their behest. The December 10th search would have been proper if done by the police alone at the repair shop. Defendant maintains that Mulrooney’s decision to turn the computer on and to open the files for Bonsignore and Degnan came at their direction and “exceeded the scope of the search” conducted by Mr. Mulrooney on December 7, 2001. The court will assume for purposes of this motion that Mulrooney’s actions on December 10th came at “law enforcement direction,” *720 even though there is no evidence to that effect, and that the officers saw all that Mulrooney had seen on December 7th. The separate claim that the officers exceeded the scope of the prior private search is dealt with in the next section.
Because the defendant does not dispute that the People “could utilize” Mulrooney’s testimony concerning the “contents of the * * * [computer files],” and indeed they concede both in their papers and at oral argument that Mulrooney’s putative testimony concerning the December 7th private search would fully provide probable cause for seizure of the computer and the search of at least that part of its contents which was the subject of the December 7th search, “it hardly infringed respondent’s privacy for the agents to re-examine the contents” of the computer on December 10th to the extent that Mulrooney had on December 7th. (United States v Jacobsen, 466 US at 119 [adding further that a government “agent’s viewing of what a private party had freely made available for his inspection, did not violate the Fourth Amendment”].) In short, and assuming for purposes of this aspect of defendant’s argument that nothing more was seen on December 10th, the December 10th search “enabled the agent[s] to learn nothing that had not previously been learned during the private search.” (Id. at 120 [also noting that “in the context of their previous examination of the package, their communication of what they had learned to the agent, and their offer to have the agent inspect it, that act surely could not create any privacy interest with respect to the package that would not otherwise exist”]; id. at 120 n 17.)
The fact that, in this case, we must assume for purposes of determining whether a hearing is necessary that Mulrooney acted at the behest of the police when he turned the computer on and displayed images of child pornography on December 10th does not alter the calculus or require that a hearing be held. This much is clear from People v Adler, in which the package opened by United Airlines personnel and searched in Los Angeles was subsequently repackaged in Los Angeles for transport to New York, and then independently opened by law enforcement personnel alone at Kennedy Airport. The court nevertheless held that the search at Kennedy Airport by law enforcement personnel “intruded upon no privacy interest not already invaded by the private party and thus [the police] lawfully seized the evidence proffered.” (Id., 50 NY2d at 738.) In other words, “when the New York Police searched the package, there was no independent intrusion requiring a warrant, but *721 simply a continuation of the valid search and seizure effected in Los Angeles” by the private party. (Id., at 738-739.)
Although certain portions of the Jacobsen opinion give some pause on the question of reopening a closed package (Jacobsen postdated Adler), recent case law makes clear that the police may do so after a private search in a case like this. On this point, we start with the proposition that the computer folders containing the images of child pornography, and perhaps even the individual image files themselves, are “closed containers” as that term has been interpreted under the Fourth Amendment. (See United States v Carey, 172 F3d 1268, 1273-1276 [10th Cir 1999]; Commonwealth v Hinds, 437 Mass 54, 58-62, 60 n 2, 768 NE2d 1067, 1071-1073, 1072 n 2 [2002]; compare United States v Runyan, 275 F3d 449, 458 [5th Cir 2001], appeal after remand 290 F3d 223 [5th Cir 2002], cert denied 537 US 888 [2002].) Nevertheless, “[i]f the files were closed and their contents not apparent from the exterior, the reasonable expectation of privacy continued [only] so long as the files had not been searched before contact with the government occurred[,] [because,] [o]therwise, that expectation of privacy would have been frustrated and at an end.” (United States v Knoll, 16 F3d 1313, 1320 [2d Cir 1994], appeal after remand 116 F3d 994, 997-998 [2d Cir 1997]; see also, United States v $557,933.89, More or Less, in U.S. Funds, 287 F3d 66, 87 [2d Cir 2002] [“reasonable expectation of privacy in closed files existed only insofar as they had not already been legitimately searched” by private party].) Therefore, the reopening on December 10th of the “xxx” and “MPG” computer file folders examined by Mulrooney on December 7th, which were found to contain (in the “xxx” folder) “pages of file names describing children performing sexual acts” and (in the “MPG” folder) “pornographic titles with a good portion of these titles having titles describing children performing sexual acts,” together with the very files in each folder previously opened by Mulrooney, would have been permissible if done by the police alone. Defendant no longer harbored a reasonable expectation of privacy in each file folder “table of contents” containing the file titles, or those individual files containing child pornography images examined by Mulrooney alone in his repair shop.
C. The December 10th Search, Which Involved Viewing More Files than the December 7th Private Search, Nevertheless Did Not Exceed the Scope of the Private Search
The viewing of files containing child pornography on December 10th in front of law enforcement personnel did not, in any *722 functional sense geared to defendant’s reasonable expectation of privacy in the “xxx” or “MPG” file folder, exceed the scope of the private search conducted by Mulrooney on December 7th. Defendant acknowledges that 18 “xxx” files were opened on December 7th and that a fewer number, six “xxx” files, were opened on December 10th, but he alleges that only six “MPG” files were accessed on December 7th while some 31 “MPG” files were accessed on December 10th in front of Irondequoit Police Department personnel. Of critical importance here is that the viewing of files on both dates concerned images of child pornography only, and that they were files contained in the only two computer file folders, denominated “xxx” and “MPG,” accessed during Mulrooney’s private search. Defendant does not allege that the officers ventured into any other computer file folders, or that they accessed other types of private information elsewhere on the computer’s hard drive. (Cf., United States v Carey, 172 F3d 1268, 1273-1276 [10th Cir 1999]; Commonwealth v Hinds, 437 Mass 54, 58-62, 60 n 2, 768 NE2d 1067, 1071-1073, 1072 n 2 [2002].)
The mere fact that additional child pornography files were accessed is not, alone, determinative. “The additional invasions of respondent’s privacy by the government agent must be tested by the degree to which they exceeded the scope of the private search.” (United States v Jacobsen, 466 US at 115; see also, id. at 116 [“the legality of the governmental search must be tested by the scope of the antecedent private search”].) “The Fourth Amendment is implicated only if the authorities use information with respect to which the expectation of privacy has not already been frustrated.” (Id. at 117.)[3] For the reasons stated below, the court holds that, when an earlier, private search opens child pornography image files on a hard drive in identified computer file folders which the private searcher found replete with file titles plainly suggesting images of like kind, defendant retains no reasonable expectation of privacy with respect to additional such image files in the same two computer file folders.
In Walter v United States (supra), the private party opened a carton containing rolls of motion picture films that appeared to be contraband, and later turned the carton over to the FBI without viewing or otherwise inspecting the films. The FBI, *723 without obtaining a warrant, used a projector and viewed the films. It was held in a plurality opinion that the FBI’s viewing of the films using the projector “was a significant expansion of the search which had been conducted previously by a private party and therefore must be characterized as a separate search.” (Walter v United States, 447 US at 657 [Stevens, J., plurality op]; see also, Kyllo v United States, 533 US 27 [2001].) Here, of course, and unlike in Walter, the private party actually viewed images of child pornography during his private search on December 7th, and therefore was possessed of information, imparted that day to the authorities, which thoroughly frustrated defendant’s expectation of privacy in the contents of the two computer file folders examined by him. As in People v Adler (supra), “there was no governmental involvement until after the private search revealed the presence of contraband.” (Id., 50 NY2d at 737.) Because “the existence of illicit [contraband] had been discovered in the course of a private search!,] any invasion of defendant’s privacy interest was complete at that point [and] [n]o new or different search was effected by the immediate surrender to and inspection by the police officer.” (People v Adler, 50 NY2d at 737 [adding that, under the Walter test, “(t)he police did not go beyond the private search when they examined the contents of the package”].)
The viewing of more “MPG” files on December 10th than were viewed by Mulrooney privately on December 7th cannot, in this context of child pornography images, implicate any expectation of privacy that was not already thoroughly frustrated by the earlier private discovery of child pornography images. That more files were seen, or, to take the record here in a light most favorable to defendant, that several more were viewed when a great many had already been discovered in the same computer file folder and disclosed verbally to the police by Mulrooney, cannot implicate any incremental expectation of privacy in the remaining child pornography images that the Fourth Amendment is prepared to recognize as reasonable. As well stated in United States v Runyan (supra), which also involved computer child pornography:
“[T]he police do not exceed the scope of a prior private search when they examine the same materials that were examined by the private searchers, but they examine these materials more thoroughly than did the private parties. In the context of a closed container search, this means that the police *724 do not exceed the private search when they examine more items within a closed container than did the private searchers. Though the Supreme Court has long recognized that individuals have an expectation of privacy in closed containers, an individual’s expectation of privacy in the contents of a container has already been compromised if that container was opened and examined by private searchers. Thus, the police do not engage in a new ‘search’ for Fourth Amendment purposes each time they examine a particular item found within the container.” (Id., 275 F3d at 464-465 [emphasis supplied and citations omitted]; see also, United States v Slanina, 283 F3d 670, 680 [5th Cir 2002] [“FBI’s full search of the computer equipment, which had already been partially searched by (a private person), did not run afoul of the Fourth Amendment” (emphasis supplied)], vacated on other grounds 537 US 802 [2002].)
This court agrees with the above-stated rationale insofar as it applies to the particular facts of the December 10th official search, and finds it to be consistent with the holding of People v Adler (supra), particularly given the facts of Adler.[4]
*725 D. The Warrantless Seizure of the Computer at Mulrooney’s Place of Business and Transport to the Irondequoit Station House
Defendant contends that the warrantless seizure, itself, of the computer from the repairman, Mulrooney, on December 10th requires suppression of the computer and its contents. In People v Adler (supra), the Court held that “the Fourth Amendment simply was not implicated by the voluntary transfer of the package to the police, for no governmental seizure in the constitutional sense exists in such a situation.” (Id., 50 NY2d at 737.) For purposes of this motion, however, an assumption must be made that the Irondequoit police asserted dominion and control over the computer quite without regard to whether, independently, Mulrooney intended to give it to them at the time. In United States v Jacobsen (supra), such action was described as a “seizure” within the meaning of the Fourth Amendment, but the Court held that, in circumstances such as these, “that seizure was not unreasonable.” (Id., 466 US at 120.) The Court held that “[s]uch containers may be seized, at least temporarily, without a warrant” because “it is well-settled that it is constitutionally reasonable for law enforcement officials to seize ‘effects’ that cannot support a justifiable expectation of privacy without a warrant, based on probable cause to believe they contain contraband.” (Id. at 121-122; see also, United States v Knoll, 116 F3d at 998 [“no error at all, much less plain error, in the government’s continued possession of the files” — the police are “entitled to retain and hold for subsequent use the evidence in its possession as a result of the private search”]; see also, United States v Jacobsen, 466 US at 120 n 18 [“the decision by governmental authorities to exert dominion and control over the package for their own purposes clearly constituted a ‘seizure,’ though not necessarily an unreasonable one”].)
Accordingly, the motion to suppress by reason of the warrantless seizure and search of the computer hard drive is denied. Given this disposition, it is not necessary to reach the People’s alternative inevitable discovery argument.
E. Failure to Swear to the “Return”
Finally, defendant’s motion to suppress on the ground that the police failed to comply with CPL 690.50 (4) and (5) is denied; “suppression * * * [would not be] mandated because *726 defendant was not provided with an inventory of the items seized.” (People v Dominique, 229 AD2d 719, 720 [3d Dept 1996], affd 90 NY2d 880 [1997]; Town of E. Hampton v Omabuild USA No. 1, 215 AD2d 746, 748 [2d Dept 1995] [“noncompliance with these ministerial requirements would not undermine the validity of the warrant or the search”]; People v Camarre, 171 AD2d 1003, 1004 [4th Dept 1991] [“return requirement is ministerial and even relatively lengthy delays in complying with it will not invalidate a seizure”].) Accordingly, the motion to suppress on the ground of noncompliance with the return requirement of CPL 690.50 is denied.
Conclusion
The motion to suppress evidence resulting from issuance of the computer warrant is denied. Inasmuch as the parties are in agreement that no evidence seized during execution of the home warrant will be introduced at trial, it is unnecessary to reach the question of probable cause for issuance of that warrant presented in defendant’s motion papers.

. See Mulrooney’s affidavit, sworn to December 11, 2002, submitted as part of the search warrant application (and quoted in defendant’s moving papers).

. In particular, “when an individual reveals private information to another, he assumes the risk that his confidant will reveal that information to the authorities, and if that occurs the Fourth Amendment does not prohibit Governmental use of that information.” (United States v Jacobsen, 466 US at 117.) This is true whether the defendant assumed that Mulrooney would keep the information a secret or not. (Id.)

. If the official search “had been more intrusive than the initial search by [the private party], only the information attributable to that additional ‘search’ would require suppression.” (United States v $557,937.89, More or Less, in U.S. Funds, 287 F3d at 87-88 [emphasis in original].)

. The court is mindful of the criticism of Runyan found in Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 1.8 (1996 [2003 Pocket Part, at 61-63]). But the facts of this case are not invoked by that portion of the Runyan holding criticized by Professor LaFave. In Runyan, the police opened more computer CD’s than the private searcher had, and with no indication that the newly opened CD’s contained the same material as found in the privately opened CD’s other than that they came from the same owner. CD’s are by their nature free standing and separate from the computer’s hard drive. Here, by contrast, the additional image files were on the same computer hard drive, and from the same computer file folder the private searcher found replete with titles clearly suggesting the presence of specified contraband. In this situation, the case is more like United States v Bowman (907 F2d 63 [8th Cir 1990], embraced in LaFave, supra [2003 Pocket Part, at 62]), in which the police opened more bundles of cocaine than the private searcher had. The presence of cocaine in the privately opened bundles “spoke volumes as to [the] contents [of the remaining bundles].” (Id., 907 F2d at 65, quoting United States v Jacobsen, 466 US at 121, quoting Texas v Brown, 460 US 730, 743 [1983]; see also, People v Acosta, 198 AD2d 285 [2d Dept 1993].) Because of the location and labeling of the computer image files in the “MPG” folder in defendant’s hard drive, it is unnecessary to apply the full reach of Runyan’s holding (and that limited part criticized by LaFave) to the facts of this case. The rationale of Runyan, quoted above, however, nevertheless has application to the facts of this case, is but an application of the plain view doctrine (People v Brown, 96 NY2d 80, 88-89 [2001]), and therefore is embraced insofar as it applies to these facts. *725 (See also, Amy Baron-Evans, When the Government Seizes and Searches Your Client’s Computer, 27 The Champion 18, 18-19, 21-22 [June 2003] [ National Association of Criminal Defense Lawyers].)